IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:24-CR-119 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| OTTMAR EBANKS, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon the Motion to Revoke Order of Release and Set Appearance Date of Defendant Ottmar Ebanks ("Defendant"), pursuant to Title 18 U.S.C. Section 3145(a)(1) filed by the United States of America on May 9, 2024 ("the Government's Motion"). (Doc. No. 35.)  On May 21, 2024, Defendant filed a Response to the Government's Motion ("the Defendant's Response"). (Doc. No. 48)  Although given until May 28, 2024 to file a Reply in support of the Government's Motion, the Government did not do so.  Neither party requested a hearing on the Government's Motion.  The Government's Motion is now ripe for a decision.

### Background

On April 3, 2024 an indictment was filed charging Defendant with:  Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of Title 21 U.S.C. § 846, in Count 1; Distribution of a Controlled Substance in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18:2, in Count 3; Attempted Possession with Intent to Distribute a Controlled Substance in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846, in Count 5; Possession with Intent to Distribute a Controlled Substance in violation of Title 21 U.S.C. §§

841(a)(1) and (b)(1)(A) and 18:2, in Count 7; and three counts of Use of a Communications Facility to Facilitate a Felony Drug Offense in violation of Title 21 U.S.C. § 843(b), in Counts 11-13.

On April 30, 2024 Defendant appeared before U.S. Magistrate Judge Lisette M. Reid in the Southern District of Florida, at which time the Government requested pretrial detention.[1] A detention hearing was set for and conducted on May 3, 2024, by U.S. Magistrate Judge Reid.[2] After the completion of the contested hearing Magistrate Judge Reid ordered a $100,000 10% bond with Nebbia and a $200,000 personal surety bond with the following conditions: report to Pretrial Services as directed; surrender passport; no contact with co-defendants; no firearms/weapons; do not encumber property; do not visit commercial transportation establishments (other than travel to ND/OH for court); home detention with location monitoring (with certain allowances); and travel extended to the ND/OH for court and the SD/FL to reside.[3] Defendant waived his right to a removal/identity hearing and the Court ordered him removed to the Northern District for further proceedings upon posting of the bonds.[4] Magistrate Judge Reid denied the Government's motion for a stay of her order.[5] On May 6, 2024, Defendant was released and immediately reported to the U.S. Probation Office and, because Defendant lives in the Southern District of Florida, he was assigned to USPO Lucien Michel for courtesy pretrial supervision.[6] In the InterCourt Memorandum filed under seal on May 20, 2024, the U.S. Pretrial Services and Probation Office for the Northern District of Ohio represented that it concurred with the recommendation of release issued by the Southern District

---

[1] Doc. No. 33-7, PageID # 255.
[2] *See*, *generally* Transcript of proceedings, Doc. No. 46, PageID #s 319-371.
[3] Doc. No. 33-11,12.
[4] Doc. No. 33-8.
[5] (*Id.*)
[6] Doc. No.47, PageID # 373.

of Florida.[7] The Court set and Defendant appeared by video conferencing for his arraignment with Magistrate Judge Grimes on May 24, 2024 or subsequent to the filing on May 9, 2024 of the Government's Motion that in part asked this Court to set an appearance date for Defendant. Thus, that portion of the Government's Motion has been granted.

In the Government's Motion and citing portions of the Indictment, the Government reiterates what it argued before Magistrate Judge Reid, i.e., Defendant is the lead defendant of a drug trafficking organization alleged to have packaged, shipped from California and other places, stored, and distributed controlled substances, to include cocaine and methamphetamines, in the Northern District of Ohio.[8] Citing to portions of the Indictment, the Government represents that the investigation into Defendant and his co-defendants revealed their respective roles and conduct in the alleged drug trafficking organization between May of 2020 and progressed through November 2020, and the "overall investigation into Ebanks' drug trafficking organization continued until January 11, 2023."[9] The Unsealed Indictment was filed on April 3, 2024 or over 14 months later. The Government also briefly mentions information that it had more fully proffered during the detention hearing concerning intelligence that HIS Cleveland obtained in October 2020 suggesting that Defendant was communicating with an individual in Jamaica about murdering someone named Biggs in Jamaica; and the contents of a November 8, 2020 call between Defendant and a male in Jamaica about the murder of Biggs's father having occurred.[10]

---

[7] (*Id.*, PageID # 373.)
[8] (Doc. No. 35, PageID # 277.)
[9] (Doc. No. 35, PageID # 281.) Although the Government represents that the investigation continued until January 11, 2023, it is worth noting that the indictment does not allege any conduct on the part of any defendant, including Defendant Ebanks, subsequent to November 12, 2020.
[10] (Transcript, Doc. No. 46, PageID #327, ls. 12-25, PageID # 328, ls. 103.)

In the Government's Motion, the Government correctly asserts that there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community when there is probable cause to believe that the defendant has committed an offense under the Controlled Substances Act that carries a maximum term of imprisonment of ten years or more or has committed certain firearms offenses, citing 18 U.S.C. § 3142€(3)(A) & (B). And, according to the Government, the evidence presented by Defendant at the detention hearing as to his family ties, residence in the community, and lack of serious criminal convictions included in the Pretrial Services Report does not outweigh the presumption of dangerousness. While the Government acknowledges that Defendant's family ties and connection to the community may weigh in favor of rebutting the risk of flight presumption, the Government nonetheless maintains that the statutory factors weigh in favor of detention as Defendant is a risk of flight due to his ties outside of the United States, specifically to Jamaica where he was born and his half-sibling(s) live, the Cayman Islands where his father and half-sibling(s) live, and Canada where his half-sibling(s) live.[11]

Finally, the Government contends that the four factors that this Court must consider weigh in favor of detention. The Government argues that the nature and circumstances of the offenses are that Defendant and his drug trafficking organization packaged, shipped, and sold substance amounts of deadly narcotics across state lines and the penalties associated therewith are substantial. Regarding the weight of the evidence of dangerousness or risk of flight, the Government asserts that Defendant has a motive and means to flee the country and he has ties outside of the United States. While

---

[11] (Doc. No. 47-1, PageID # 375.)

recognizing that the conduct giving rise to this case occurred in 2020, the Government submits that Defendant just became aware of the indictment in April, 2024 and only now has the motivation to flee. Again, the Government concedes that the history and characteristics of Defendant, family ties to Florida, employment, stable mental and physical condition, and lack of serious criminal convictions likely weigh in favor of Defendant's release but asserts that "an overall assessment of the defendant's conduct and review of the nature and circumstances of the offense charged would outweigh his ties to the community in Florida and lack of serious criminal convictions."[12]

In response, Defendant asserts that the conduct outlined in the Indictment that occurred between May and November 2020 that the Government relied upon at the detention hearing and in its Motion to argue that Defendant is a danger to the community with bond conditions, and the fact that the investigation continued until January 2023, is evidence that Defendant is not a danger to the community. According to Defendant, if the Government believed that Defendant was not only a danger to the community but such a danger that no conditions of bond could protect the community, then it would have taken him into custody during the 4 years that have elapsed since the beginning of the alleged drug trafficking conspiracy (May 2020), or during the 3 ½ years since the alleged conspiracy ended (November 2020), or in the almost 1 ½ years since the Government completed its investigation in January 2023.

In support of his contention that he does not pose a danger to the community, Defendant points to the information in the Pretrial Services Report that was considered by Magistrate Judge Reid, specifically his history and characteristics to include: he has lived in Florida for 27 years and lives

---

[12] (Doc. No. 35, PageID # 286.)

with and is the primary caregiver for two of his children; he owns and operates a rental property business; he has no prior convictions; there is no indication he has ever missed a court date; he has no record of substance abuse or mental health problems; and he requires monthly injections for a health problem. Also, Defendant points to the evidence adduced since the detention hearing to demonstrate he is not a danger to the community, i.e., upon being released on bond he reported to the probation officer and was placed on location monitoring and has complied with his conditions, and letters attached to Defendant's Response demonstrating that Defendant positively contributes to the community. Indeed, this Court notes that Defendant appeared for his arraignment, albeit by video conferencing as permitted by Magistrate Judge Grimes.

In terms of risk of flight, Defendant points to some of the same facts that he relies upon in arguing he is not a danger to the community and additionally, points to the facts that Defendant is a U.S. citizen, he has not traveled outside the United States in 20 years,[13] and he did not flee once he was released on bond. Defendant also contends that there is no evidence that Defendant had ordered any murder, induced it, or was complicit in it; and regardless, the calls concerning any murder(s) in Jamaica occurred over three years ago. In sum, Defendant argues that the Government has not established by clear and convincing evidence that no conditions can prevent him from endangering the community or, by a preponderance of the evidence, that no conditions can prevent him from fleeing.

**Discussion**

18 U.S.C. § 3145(a)(1) provides in relevant part as follows:

---

[13] The Pretrial Services Report indicates that Defendant reported that he had not traveled outside the United States in the past ten years, not twenty years. (Doc. No. 47-1, PageID # 375.)

6

> If a person is ordered released by a magistrate judge, *** the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the conditions of release.  The motion shall be determined promptly.

District courts exercise a *de novo* review of a magistrate judge's release or detention order. *United States v. Fitzhugh*, 2016 WL 4727480 (E.D. Mich. Sept. 12, 2016 (citations omitted); *United States v. Eckenrode*, 2013 WL 257052 (N.D.Ohio Jan. 23, 2013) ("A District Court reviews the release order of a Magistrate Judge *de novo*.")

This Court has conducted a *de novo* review of Magistrate Judge Reid's release order.  It has reviewed the Pretrial Services Reports, the InterCourt Memorandum from the U.S. Pretrial Services and Probation Office of the Northern District of Ohio indicating that office's agreement or concurrence with the recommendation of release, the Transcript of the detention hearing, the Indictment, and the Government's Motion and Defendant's Response with attached letters, and has evaluated the arguments set forth therein.  And, it has considered the factors set forth in 18 U.S.C. § 3142(g).[14]  Having done so, this Court finds that the Government has not met its burden to establish, by clear and convincing evidence, that no conditions can prevent Defendant from endangering the community; and it has not met its burden, by a preponderance of the evidence, that no conditions can prevent him from fleeing.

---

[14] Title 18 U.S.C. § 3142 "provides the framework for the district court's analysis as to whether release pending trial is proper." *United States v. Williams*, 2020 WL 2529356 (E.D. Tenn. May 18, 2020) (citing *United States v. Webb*, 238 F.3d 426, at *2 (6th Cir. 2000) (table opinion)).  "The ultimate touchstone of this analysis is 'whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community.' § 3142(g)." *Id.* Courts must consider the following: (1) the nature and circumstances of the offense charged, including whether it is a crime involving a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, e.g., his or her character, mental and physical condition, family and community ties, financial resources, criminal history, and substance-abuse history; and (4) the nature and seriousness of the danger posed to the community by the defendant's potential release.

7

Accordingly, that portion of the Government's Motion asking this Court to revoke the order of release is DENIED.

**IT IS SO ORDERED.**

Date:  June 11, 2024

                                       *s/Pamela A. Barker*
                                       PAMELA A. BARKER
                                       U. S. DISTRICT JUDGE